We'll start right away with United States v. Cotto, 21-2791. Mr. Jacobs, again, good morning. Good morning, Your Honor. Back to back. I appreciate the Court's scheduling needs. It is Groundhog Day, so. Indeed. May it please the Court, good morning. My name is Brian Jacobs. I represent Appellant Eddie Cotto on appeal. I did not represent him below. The District Court, in this matter, committed a clear error when it admitted one of the most important pieces of evidence at trial over a defense objection as a co-conspirator statement in furtherance of the charge conspiracy. And the error was not harmless because that piece of evidence was one of the key pieces of evidence of drug quantity, both at trial and for sentencing purposes. The statement in question was an individual named Irvin Ortiz saying that a particular seizure of heroin was the week's worth of heroin. And the government used that statement, the week's worth, to extrapolate and say that the conspiracy involved that amount of heroin. Judge Rakoff admits the statement, among other statements, because he finds, and I think it's a factual finding, that the statement is in furtherance of the conspiracy. Is that correct? Judge Rakoff initially says it's only marginally in furtherance of the conspiracy at best, but then the next morning Judge Rakoff said, well, he said he was going to review the video. The next morning Judge Rakoff said he was admitting the statement. He did not explain the ruling the next morning, other than to say that the evidence... But of course, having admitted that statement, we can presume that it was because he found that it was in furtherance of the conspiracy. Did you do that? Correct, Your Honor. So that's subject to clear error. Correct, Your Honor. Under the Al-Muyad case... So the statement is Ortiz reassuring a customer that actually they're going to remain open for business and he's going to be able to come back tomorrow and buy additional drugs. And why doesn't that further the conspiracy? Your Honor, the statement in question, the comment, the week's worth, is part of a very long narrative statement, most of which we would submit does not reassure the customer at all, but does just the opposite. And if anything, would scare a customer away because it is a dramatic narrative description of a law enforcement action. You said there was a law enforcement action, but it only disrupted us temporarily and we're going to be up and running. That would reassure a customer, wouldn't it? That statement could reassure a customer, but that's not the... In context, that's not what the week's worth comment conveys. In context, that comment is part of the long description of the law enforcement action. There is a statement much later, several minutes later, about how tomorrow we'll be back on again, but nothing about the week's worth comment. So do you agree that the beginning of the statement where there's an offer to buy drugs and the end of the statement that says we'll be up and running tomorrow, that's it furthers the conspiracy? And you just think the district court should have excised the middle part of it, of the statement? Well, it's a very long statement, several minutes long with multiple pauses. And if you look at the time stamps, the statement about tomorrow it's back on again and the statement can I buy drugs, those are in furtherance of the conspiracy where you have a customer and you have a doorman, essentially, talking about drug purchases and when they could take place. Was there an offer to redact? There was no offer to redact. The defense objected entirely to the statement and Judge Rakoff at least indicated that he thought it was marginal, but then the next morning ruled without any further explanation and there was no further... Was there a warning? You say no explanation, but was there a warning that he had changed his mind after reviewing the videotape? I need to look at the record to see exactly what he said, but it was a brief discussion right before the trial day commenced. And we would submit that in context, this comment, the week's worth, and when you listen to the tape, it's not even clear that the word worth is what is being said. It really does not reassure the listener at all of anything. It's part of a long narrative entertaining the customer while they wait. So he comes in, so it's a customer that's approaching him to buy drugs and then you're saying they just started chit-chatting about what happened yesterday. Correct, Your Honor. So even though the beginning of the statement is an attempt to further the conspiracy by consummating the drug deal and the end of the statement is that too, in the middle it's just a digression. Correct, Your Honor. They're waiting for the... Is it a run? I mean, could you also understand his explanation about what happened and that it was only a temporary problem to be part of the reassurance? If the statement supported that reading, perhaps, but that's not at all the way the statement reads. It is an exaggerated, entertaining accounting of what happened in this law enforcement action, and much of what is said is not accurate. The speaker says that the seizure happened on one floor when it happened on another. He says there were 20 police cars, but there were only three police officers. But a lot of what is said is consistent with the government's evidence. I don't know that anything that is said is precisely consistent with the government's evidence. He says there were 20 police cars when it was three officers on foot. I mean, that could not prove that the quantity of cars was 20. It makes no more sense to allow the statement the week's worth to prove the quantity of drugs. The statement about the amount of drugs seized isn't even on all fours with what the government asserts. He says there were 20 packages of heroin and 10 of coke. In fact, it was 245 glassines of heroin and 88 packets of cocaine. So even his statements about quantity are not accurate. He doesn't know the amount seized. He also says there were these radio messages about get out of the building, and there's no evidence that that ever happened. So much of what he said is not corroborated. And the question, this is an exception that is supposed to be interpreted narrowly. That's what the Court has said. It is supposed to be interpreted narrowly, and this is exactly the kind of witness you would want to examine. The statement of a co-conspirator, or we're talking about a statement against interest? A co-conspirator statement, that exception is meant to be construed narrowly. I would submit that the penal interest exception, which Your Honor is touching on, has even less relevance here. Judge Rakoff did not rule on the penal interest exception, and there the standard itself requires that the statement be corroborated. Right, but the corroboration is when we do that analysis, but there's no corroboration requirement about the statement of a co-conspirator, is there? I think that the Lieberman case, which we cite in our brief, does say that the purpose of the co-conspirator exception and the narrow interpretation of it is to ensure the reliability of the statement and that the co-conspirator against whom the statement's being used, in fact, authorized the statement. And that it's the sort of statement where you don't need to cross-examine the speaker. I want to touch briefly on the sentencing issue before my time is up. We submit, in addition to arguing that the co-conspirator exception was erroneously applied, that the sentence was procedurally unreasonable because Judge Rakoff made erroneous factual determinations about Mr. Cotto's role in the conspiracy. Judge Rakoff says at sentencing that this is the most important factor, that he's a leader of the conspiracy. But the facts the Court relies upon to make that finding, that Mr. Cotto set the price, or the facts that the government relies on, I'm sorry. The government recites the evidence. Correct, correct. The government recites the evidence. Judge Rakoff does not clearly explain at all what the basis is for his finding of leadership. But the evidence the government recites, that Mr. Cotto set the price and had access to a closet that others could access and directed customers, which is actually a low-level job, simply don't establish leadership at all. Well, he also had Mr. Torres, who is the superintendent, who testifies that he saw Mr. Cotto direct, using a walkie-talkie, direct people to come into the building. I don't know whether that's low-level or high-level, but that may be a choice that Judge Rakoff was entitled to make in connection with the leadership rule finding. Yes, Your Honor, but without a clear record on why he made the finding, it's difficult. I guess I'm suggesting to you he doesn't need a clear record. He needs a preponderance of the evidence standard, right, with respect to a 3553 finding. It is correct, Your Honor. It's a preponderance of the evidence standard. I would say it's relevant to both the Guidelines Analysis and the 3553A, and the record doesn't Well, you were making an argument in your brief that it was not, at least under the circumstances of this case and this sentencing, not relevant to sentencing, to the Guidelines Analysis, but rather relevant to the 3553 analysis. I believe the district court applies it in both and does apply the enhancement under the Guidelines and considers it for 3553A purposes, but we would submit that the record Well, I know that the PSR does. Correct, and I believe that Judge Rakoff adopts the PSR finding. I see my time is up, but I'll reserve time for rebuttal. Thank you. We'll hear from the government. May it please the Court. My name is Rebecca Dell. I'm an Assistant United States Attorney in the Southern District of New York. I represent the United States in this appeal, as I did in the trial in the district court. I'd like to start with where the panel focused most of its attention, which is the Weeksworth Statement from Mr. Ortiz. Counsel for the defendant was, spent much time by focusing on the fact that, about Judge Rakoff's initial rulings on that Weeksworth Statement. When Judge Rakoff made his initial statements about the Weeksworth Statement, he said very clearly that he could not rule until he viewed the evidence and he viewed the video. The following morning, after reviewing the video, Judge Rakoff was very clear that the statements from Mr. Ortiz were in furtherance of the conspiracy, and that ruling was not an abuse of discretion. The statements were in furtherance of the conspiracy for numerous reasons. In particular, the statements promoted trust and cohesiveness between Ortiz and the customer who was in his car at the time. When, as the panel is aware, they were both in the car at the time because the customer was trying to buy drugs from Ortiz. And he also knew that the defendant, Cotto, had been arrested earlier that week. So he asked, what happened? Why had the defendant been arrested? And in the middle of that drug deal between Ortiz and the customer, Ortiz explained why the defendant had been arrested. If Ortiz had not answered the question and simply said, I can't tell you, that would have obviously driven the customer away. He would have told Ortiz to exit the car. But, I mean, that's a very meta-level description, right? Does that mean that everything that he says in the context of responding to that question is in furtherance of the conspiracy, even if it sort of strays fairly far from the responsiveness to the question? It doesn't necessarily mean that everything he would say, but in this particular context, when he's answering the direct question of what happened to the defendant, why was he arrested, his explanation as to why he was arrested in this case promotes trust and cohesiveness between the customer and Ortiz. But what about the Weeksworth statement? That statement in particular is in furtherance of the conspiracy. Again, in order for Ortiz to explain why the Weeksworth statement, in order to explain why the defendant had been arrested, he first started by explaining how the police had arrived in the building on Friday night and had seized drugs from a slop sink closet. Then he explains how the following day the defendant had to come back into the building with a bag of drugs, that was the Weeksworth of drugs, in order to replenish what had been stolen. And when he came back, that's when the police arrested him. So had he not, had Ortiz stopped and not explained the full story, the customer would never have learned why the defendant was arrested, why he was in the building. And I also want to point to one other note. The counsel for the defendant was stating that the— Does he have to learn why he was arrested? I mean, if he had said, look, yeah, he was arrested, it's a hiccup in our operation, but you should come back tomorrow because we'll be replenished, that would also have furthered the conspiracy, right? Yes, that would have also been in furtherance of the conspiracy. So he adds these additional details, and you're just saying the fact that he added the additional details, maybe he didn't have to, but it still furthers the conspiracy because it was meant to reassure the customer. Is that right? It was meant to reassure the customer. It was meant to promote trust and cohesiveness with the customer because it was— I mean, you might have any number of retrospective statements that just give a kind of narrative about what happened to somebody, and it's meant to promote trust, but that seems like that would allow lots of statements to come in. But in this particular context, Ortiz is trying to give the full story as to why the defendant was arrested. And so in this particular case, the statements were in furtherance of the conspiracy. There were also statements against penal interest, which the panel was focusing on before. Can I ask a question about—because I want to hear your argument, but my threshold question is since the district court didn't rule on that and it involves a discretionary ruling, can we even—could we even independently say, oh, there's this other reason? Yes, the Second Circuit case law says that you're allowed to affirm on an additional reason, even if it wasn't the reason found by the district court. When the trial court record sets that up, I 100% agree. I'm trying to figure out how we would rule on an additional basis when it involves an exercise of discretion. We might conclude that the district court could have decided that it was a statement against penal interest but also could have concluded that the predicates for a statement against penal interest weren't met. And in the absence of the district court's both sort of factual determinations and exercise of discretion on that point, how can we weigh in without essentially putting ourselves in the position of a fact finder? I think this is also relevant to the question of harmless error. So if the court were to find that the statement was not in furtherance of the conspiracy but it was a statement against penal interest, that would be part of the court's finding as to why there was no error here. But we have to conclude based on the record that as a matter of law it was a statement against penal interest, not that the district court could have concluded that it was a statement against penal interest. Correct. And focusing on the harmless error here, even if we were to excise this statement, the weeks worth statement from Ortiz, I believe that the panel should find that this statement, that even if the court erred, that it was harmless error. And the reason for that is because there's over- Say that again. Even if the court were to find that the court had committed an error, the district court had committed an error. With respect to the in furtherance of the conspiracy. Correct. It would be a harmless error because there's overwhelming evidence to show that the conspiracy involved more than 100 grams of heroin. We have statements from the defendant himself, recorded statements saying that he sells drugs every day from 4 a.m. to 1.30 in the morning and that he doesn't miss any days. We know from the testimony of Joseph Llanos that those are the exact hours for heroin users to buy drugs. Heroin users buy drugs in the early morning. We know from the testimony of Luis Torres that every morning he was woken up to Eddie Cotto shouting out shifts and orders for his workers to go into the building and sell drugs. As a historical matter, we know looking at the record that the court found this particular piece of testimony critical to the court's decision to let the more than 100 grams go to the jury. And we know that it was central to the government's argument to the jury. I'm puzzled by the notion in that context that we could say, well, there's all these other arguments that they could have made and that the jury could have considered, and therefore it's harmless. Well, these are not arguments that could have been made. These are arguments that were in fact made. This is evidence that in fact was presented to the district court, and it was actually part of the district court's ruling. Yes, the district court referenced the week's worth statement, but the district court also referenced the testimony from Luis Torres that I was describing, the testimony from Joseph Llanos about how he- Of course, if we were to disagree with you, that all of this other evidence that you're now reciting is overwhelming, that would make the harmless error analysis a little bit more difficult for the government, correct? Primarily you're relying on the statement of a week's worth. And I think also maybe Mr. Torres, I appreciate that. I disagree. The government at trial presented all these different pieces of evidence in order to prove that the conspiracy involved more than 100 grams of heroin. The fact that there were 11 controlled buys that yielded 40 grams of heroin shows that, and if you divide that up, that means that 3.6 grams of heroin were made during each sale. The evidence showed that Eddie Cotto sold drugs every day, and the conspiracy lasted for about 12 or 13 months. So if there were just six instances in which members of his conspiracy sold heroin, that would also get us over the 100-gram threshold. You said that you could extrapolate based on the evidence here about an ongoing conspiracy and what the quantity would be, right? Like this is a normal thing. Yes, yes. Pauling expressly states that the court is permitted to extrapolate based on known quantities of drugs, which in this case we have based on the controlled buys. And we know that these 11- And the 4 to 130 statement. Yes. Every day. Yes. And the evidence at trial shows that these 11 controlled buys were not the only times that Eddie Cotto sold drugs during the time period of the conspiracy. Joseph Llanos testified to purchasing drugs. In addition, there's at least one controlled buy video where if you look at the stairwell, you can see one of Eddie Cotto's crew members selling drugs to other customers. I know defense counsel states that that is not in the video, but I encourage the court to look at the video. It's very difficult to decipher these videos. As a disinterested observer, or maybe interested observer, I don't know, but it's very difficult to decipher those videos. Understood. If the court cared to look back at that video, I encourage them to look at Exhibit 304C around minute 138, 140. You can see there are other individuals in the stairwell at the time that one of the CSs is purchasing drugs from Eddie Cotto's crew members. So all of this evidence from Torres, Eddie Cotto's own statement, Joseph Llanos' statement, and the controlled buys themselves demonstrate that this conspiracy overwhelmingly involved more than 100 grams of heroin during the 12 to 13 months. And I can see I'm almost done if the court doesn't have any questions. Actually, you are done. Thank you so much. Thank you, Your Honor. I'd like to just briefly respond to a few points the government made. First, the Birnbaum case we cite, 337F 2nd 490 from this court, says clearly, the fact that one conspirator tells another something relevant to the conspiracy does not alone make the declaration competent. The declaration must itself be an act in furtherance of the common object. Mere conversation between conspirators is not that. We'd submit that what you have here is mere conversation between conspirators. It doesn't matter that this conversation touched on the conspiracy. Another plausible, you may be right, but that's an excellent view. I guess the question before us, is it also not a plausible alternative view that what's going on between Mr. Ortiz and the confidential source is an effort to promote trust and to make sure that that customer comes back to the crew and continues to buy the product? Your Honor, I think the kind of colorful story here about an aggressive law enforcement action with 20 cars that didn't even exist is not the sort of conversation that could, in any world, be deemed to promote trust. I might agree with you that the deficiencies and the inaccuracies in Mr. Ortiz's statements affect my assessment of whether that statement can come in as a statement against penal interest on reliability grounds. But I'm very focused on the furtherance issue. And I don't know that I've heard, why is Judge Rakoff's view, understanding he didn't fully explain it when he admitted the statement, why is Judge Rakoff's view of the evidence impossible? Take out the unreliable statement. So he's a little bit of Don Quixote, that's fine. But why is the core statement, where he is trying to get a customer, to keep a customer, why is that not in furtherance of the ongoing conspiracy? If this statement could be deemed to have the goal of keeping a customer, then almost any conversation between a drug supplier and a customer could conceivably qualify, because other than a statement that is pushing the customer away, any discussion of the drug dealing operation could be deemed to further the conspiracy. The law requires more. It requires promoting and furthering the object of the conspiracy. So we would submit that you need something more than what you have here. I thought you said that you would agree that the last part of the statement, where he's telling the person that he could come back tomorrow to buy the drugs, was in furtherance of the conspiracy, right? The statement, tomorrow it's back on again, does say that promotes an object, because an object of the conspiracy is selling drugs tomorrow. That conceivably could be in furtherance of the conspiracy. Promoting trust with a customer in order to get them to return would be in furtherance of the conspiracy. You're just saying that this part of the statement did not do that, right? This part of the statement did not do that, even on a deferential review of a district court ruling. Unless the court has other questions, we'll rest on our briefs. Thank you very much, Mr. Jacobs.